## Sameric Corporation of Brookhaven v. Arthur A. Kober Co., Inc.

*Egnal & Egnal*, for plaintiff.
*Samuel Moonblatt*, for defendant.

TAKIFF, *J.*, July 31, 1975—Presently before the court are cross motions; one by plaintiff for judgment on the pleadings and the second being plaintiff's preliminary objections to defendant's counterclaim. The seeming paradox suggested by inconsistent motions filed by plaintiff is partially explained by the chronology. The motion for judgment was filed with the motion court on February 7, 1975, the counterclaim was filed with the

prothonotary on February 15, 1975, and the preliminary objections to the counterclaim were filed with the motion court on February 20, 1975. Further insight into the tangled web of the multiple pleadings now of record may be gleaned from the various allegations and answers.

On or about July 6, 1971, Arthur A. Kober Co., Inc. ("builder") entered into a contract with Brook Developers, Inc. ("owner") and A. Abner Rosen and Abner Rosenberg, now deceased ("sureties") for the construction, inter alia, of a theatre to be erected as part of a real estate development known as Brookhaven Shopping Center, to be occupied by Sameric Corporation of Brookhaven ("lessee"). As part of that construction lessee agreed to perform the plumbing, heating, ventilating and electrical work for the theatre to be occupied by it in the capacity of a subcontractor to the builder for the sum of $47,000 under an agreement dated May 18, 1971. The theatre was constructed and occupancy accepted by lessee on May 9, 1972. As of May 17, 1972, builder and lessee entered into a writing denominated a "statement of account" reflecting various debits and credits incurred between themselves in connection with that construction, including payments made by each to the other and including the gross subcontract obligation of $47,000, which statement of account reflected a balance due to lessee of $9,407.27. Thereafter, however, on February 15, 1973, the architect, whose certification of completion of work as a precondition for payment by the owner to the builder of the balance due on the basic construction contract, which included approximately $42,000 claimed as due by the builder in connection with the construction of the theatre, rejected the builder's request for such

certification of completion on the advice "of my client's attorney." At this juncture, the web gets somewhat tangled by the identity of the parties because the attorney for the owner was also the attorney for the sureties and also the attorney for the lessee. It is patently clear that thereafter, the builder, not receiving payment from the owner, failed and refused to consummate the settlement under the "statement of account" with the lessee.

Owner-sureties' and builder thereafter sought surcease from their controversy in the arena of the American Arbitration Association, at the initiation of the builder, who prevailed with an award in its favor against the owner and sureties. That proceeding, however, has not yet reached the repose of final adjudication. It was attacked in a variety of ways by the owner-sureties, still represented by the same attorney, and will be found in the Court of Common Pleas of Philadelphia County, January term 1974, no. 634.

The instant complaint avers that builder-defendant owes lessee-plaintiff the sum of $9,407.27, which represents the cost for the completed lessee subcontract work at $47,000, less certain amounts owed by lessee to builder. These sums allegedly were due "on various construction contracts." Plaintiff submits that the statement of account attached to the complaint is an admitted understanding of the account between the parties as of May 18, 1972.

The answer admits the demand but denies liability for reasons raised in new matter. The thrust of builder's defense is that owner, despite completion and occupancy of the theatre, has refused to make payment of the balance due of $42,006 because the architect has, on advice of owner's attorney, re-

fused to certify as complete the theatre. Thus, lessee is drawn into the owner-builder dispute on an inarticulately framed theory of tortious interference with contract in that the attorney who allegedly advised the architect not to certify the building as complete, is counsel for owner, sureties and lessee. Hence, it is made to appear that lessee, by its agent-attorney, wearing one or the other of his hats, has prevailed upon owner's architect to refuse issuing the final certificate, thereby interfering with builder's right to the $42,006 due it and seeking to avoid or defer the obligation of builder to pay lessee-subcontractor the balance due it.

Lessee responds that builder has an award from arbitrators which compensates it, inter alia, for the claim due on the theatre. As previously noted in the chronology of events, that award is the subject of further challenge in this court, coincidentally or otherwise by the attorney for lessee-owner-sureties. Specifically, however, lessee, plaintiff herein, maintains that the counterclaim is improper under Pa.R.C.P. 1031 and 1026.

For the reasons set forth below, we are of the opinion that plaintiff's motion for judgment on the pleadings should be denied and that plaintiff's motion to strike the counterclaim should be granted.

(1) Pa.R.C.P. 1034(a) provides:

"*After the pleadings are closed*, but within such time as not to delay the trial, any party may move for judgment on the pleadings."

The pleadings are not closed. Builder-defendant in the present assumpsit action has joined owner and sureties by complaint as additional defendants, asserting that there is liability over for the sum of $9,407.27 claimed by plaintiff. This complaint, a copy of which has been submitted, was apparently

inadvertently not filed, although owner filed an answer to it, still acting by the same attorney as that representing plaintiff-lessee. The failure to file that complaint appears to be due to an error in identification of the term of court; our inspection of the docket entries as of June 27, 1975, discloses that the complaint was filed as of January 2, 1975, and cryptically marked "served" as of December 4, 1975 (the discrepancy in chronology is explained by the fact that the improperly termed complaint was served before the properly termed complaint was filed). It appears that the sureties have not, in fact, been served; builder asserts it cannot serve them because their counsel in the related proceedings pending in this court refuses to accept service on their behalf and builder cannot locate them. If the sureties have not been served, they have had no opportunity to answer the complaint. The pleadings are not closed and, aside from any disposition on the merits, motion for judgment on the pleadings is premature.

(2) The counterclaim which builder filed was, of course, separate from its answer and new matter filed December 18, 1974.

Pa.R.C.P. 1031, which addresses the subject of counterclaims, provides:

"(a) The defendant may set forth in the answer under the heading 'Counterclaim' any cause of action or setoff which he has against the plaintiff at the time of filing the answer (1) which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose, or (2) which arises from contract or is quasi-contractual."

The weight of authority is that a counterclaim is to be filed as part of an answer. It cannot be filed

independently of an answer as a separate pleading: Goodrich-Amram §1031(a)-3, at 208; Davis v. D'Ambrosio, 13 Chester 401 (1965). The proper procedure wherein a claim arises out of the same subject matter is to amend the answer, if such is applicable, or by instituting a separate suit: Branson Equip. Co. v. Industrial Finishing Systems, Inc., 15 Bucks 447 (1965). And see Warner Hospital v. Jones, 16 Adams 113 (1974). If separate suit is appropriate, multiplicity of litigation can be avoided by appropriate consolidation for trial.

Even more determinative of defendant's counterclaim is the clear holding that a claim for tortious interference with a contract cannot be set up as a counterclaim in an action of assumpsit: Bloom v. Devonian Gas & Oil Co., 397 Pa. 309, 155 A. 2d 195 (1959). The complaint here was properly drawn in assumpsit but the basis of the counterclaim is allegedly tortious conduct by plaintiff through its agent. See Restatement, Torts, §766. The counterclaim is inappropriate. Accordingly, we enter the following

## ORDER

And now, July 31, 1975, upon consideration of plaintiff's preliminary objections to defendant's counterclaim and answer thereto, it is hereby ordered and decreed that the preliminary objections are sustained, and the counterclaim is ordered stricken from the record.

## ORDER

And now, July 31, 1975, upon consideration of the motion for judgment on the pleadings and answer thereto, the motion is denied without prejudice, with leave granted to plaintiff to resubmit once the pleadings are closed.